No. 23-11741-J

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

L.E., et al,

Plaintiffs-Appellants,

vs.

SUPERINTENDENT OF COBB COUNTY SCHOOL DISTRICT, et al,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Northern District of Georgia
Civil Action File No. 1:21-cv-04076-TCB

---

## APPELLANTS' OPENING BRIEF

---

Michael J. Tafelski
Eugene Choi
Claire Sherburne
Brock Boone
**SOUTHERN POVERTY LAW
CENTER**
P.O. Box 1287
Decatur, GA 30031-1287
(334) 956-8273

Allison B. Vrolijk
**LAW OFFICE OF ALLISON B.
VROLIJK**
885 Woodstock Road, Suite 430-318
Roswell, GA 30075
(470) 550-7268

Craig Goodmark
**GOODMARK LAW FIRM**
1425 Dutch Valley Place, Suite A
Atlanta, GA 30324
(404) 719-4848

*Attorneys for Plaintiffs-Appellants*

*L.E., et al v. Superintendent of Cobb County School District, et al*, No. 23-11741-J

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. Rule 26-.1-2, the undersigned counsel for Appellants certifies the following complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

A.Z. – Plaintiff-Appellant (minor)

Baird, Elizabeth – Parent of B.B.

Banks, David –Defendant-Appellee

Batten, Hon. Timothy – Trial Judge

B.B. – Plaintiff-Appellant (minor)

Boone, Brock – Counsel for Plaintiffs-Appellants

Cavorley, Sara – Parent of L.E.

Choi, Eugene – Counsel for Plaintiffs-Appellants

Cobb County School District – Defendant-Appellee

C.S. – Plaintiff-Appellant (minor)

Culves, Sherry – Counsel for Defendants-Appellees

*L.E., et al v. Superintendent of Cobb County School District, et al*, No. 23-11741-J

Daniel, Jeffrey – Counsel for Defendants-Appellees

Davis, Nichelle – Defendant-Appellee

Goodmark, Craig – Counsel for Plaintiffs-Appellants

Goodmark Law Firm – Law Firm for Plaintiffs-Appellants

Hutchins, Leroy Tre – Defendant-Appellee

Law Office of Allison B. Vrolijk – Law Firm for Plaintiffs-Appellants

L.E. – Plaintiff-Appellant (minor)

Moulard, Brandon – Counsel for Defendants-Appellees

Parker, Poe, Adams & Bernstein, LLP – Law Firm for Defendants-Appellees

Ragsdale, Chris – Defendant-Appellee

Sayler, Becky – Defendant-Appellee

Scamihorn, Randy – Defendant-Appellee

Sherburne, Claire – Counsel for Plaintiffs-Appellants

Shirley, Tarasha – Parent of C.S.

Southern Poverty Law Center – Law Firm for Plaintiffs-Appellants

Tafelski, Michael – Counsel for Plaintiffs-Appellants

Vrolijk, Allison – Counsel for Plaintiffs-Appellants

*L.E., et al v. Superintendent of Cobb County School District, et al*, No. 23-11741-J

Wheeler, Brad – Defendant-Appellee

Zeigler, Jessica – Parent of A.Z.

Respectfully submitted,

*/s/ Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Attorney for Appellants

## STATEMENT OF ORAL ARGUMENT

Appellants respectfully request an opportunity to present oral argument. This case involves important legal questions regarding the obligations of public entities to consider facially reasonable requests for accommodations under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; the definition of meaningful access under these statutes; and the jurisdictional standing of students with disabilities to bring their claims against a public school district for violations of these statutes. This case was initiated in 2021, and this is Appellants' second appeal of a decision of the district court in this case. Appellants respectfully submit that oral argument will significantly aid this Court's decisional process on specific points of law and pertinent parts of a voluminous record.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT.........................................................................1

STATEMENT OF ORAL ARGUMENT ................................................... i

TABLE OF CONTENTS............................................................................ ii

TABLE OF CITATIONS ........................................................................... iv

JURISDICTIONAL STATEMENT ........................................................... xi

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE.....................................................................2

    I. Statement of the Facts ...................................................................2

    II. Course of Proceedings and the District Court's Order ............................10

    III.Standard of Review.....................................................................13

SUMMARY OF THE ARGUMENT ........................................................14

ARGUMENT AND CITATION OF AUTHORITY................................16

    I.The district court erred by dismissing A.Z. and C.S. as parties to this

    case. .............................................................................................16

        A.  The district court failed to analyze standing based on the facts at the

        outset of litigation.................................................................... 16

B.  Students' claims for injunctive relief notwithstanding, the district court erred by dismissing A.Z. and C.S. for lack of standing without considering their standing to pursue damages. ...................................... 22

C.  If the district court intended to dismiss A.Z. and C.S. on mootness grounds, its decision was still legal error. ................................................ 23

II. The district court erred by denying students' request for preliminary injunction based on its holding that they are not substantially likely to prevail on their ADA and RA claims. .......................................................... 26

A.  The district court erred by holding that CCSD may circumvent its obligation to conduct an individualized inquiry into facially reasonable accommodation requests so long as CCSD offers an alternative. ............................................................................................ 26

B.  The district court erred by holding that CCSD's alternatives are effective in providing B.B. and L.E. with meaningful access to the benefits of an in-person education. .............................................................. 31

CONCLUSION ...................................................................................................... 34

CERTIFICATE OF COMPLIANCE ....................................................................... 36

CERTIFICATE OF SERVICE ............................................................................... 37

## <u>TABLE OF CITATIONS</u>

**Page(s)**

**Cases**

*A.L. by and through D.L. v. Walt Disney Parks and Resorts U.S., Inc.*,

900 F.3d 1270 (11th Cir. 2018) ............................................................31

*Alboniga v. Sch. Bd. of Broward Cnty. Fla.*,

87 F. Supp. 3d 1319 (S.D. Fla. 2015) ..............................................27, 28

*Alexander v. Choate*,

469 U.S. 287 (1985) .........................................................................26, 31

*AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,

494 F.3d 1356 (11th Cir. 2007) ............................................................14

*Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cnty.*,

766 F.2d 1391 (10th Cir. 1985) ............................................................18

*Burke v. Hillsborough Cnty. Sch. Bd.*,

752 F. App'x. 713 (11th Cir. 2018) .......................................................24

*Carr v. Alta Verde Indus., Inc.*,

931 F.2d 1055 (5th Cir. 1991) ..............................................................18

*Cash v. Smith*,

    231 F.3d 1301 (11th Cir. 2000) ...........................................................26

*City of Los Angeles v. Lyons*,

    461 U.S. 95,102 (1983)......................................................................20

*Cnty. of Riverside v. McLaughlin*,

    500 U.S. 44 (1991)............................................................................20

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*,

    804 F.3d. 178 (2d Cir. 2015) ............................................................30

*Dow Jones & Company, Inc. v. Kaye*,

    256 F.3d 1251 (11th Cir. 2001) .........................................................24

*Dudley v. Hannaford Bros. Co.*,

    333 F.3d 299 (1st Cir. 2003)..............................................................28

*\*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,

    344 F.3d 1263 (11th Cir. 2003) ..............................................16, 17, 22

*Freedom from Religion Foundation, Inc. v. New Kensington Arnold*

    *School District*,

    832 F.3d 469 (3rd Cir. 2016) ............................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

    528 U.S. 167 (2000)....................................................................20, 21, 23

*Fry v. Napolean Cmty. Schs.*,

    580 U.S. 154 (2017).......................................................................22, 26

*Goss v. Lopez*,

    419 U.S. 565 (1975)..............................................................................24

*Holly v. Clairson Indus., LLC.*,

    492 F.3d 1247 (11th Cir. 2007) ...........................................................26

*In Re Managed Care Litigation*,

    605 F.3d 1146 (11th Cir. 2010) ...........................................................14

*Johnson v. Bd. of Regents of Univ. of Ga.*,

    263 F.3d 1234 (11th Cir. 2001) ...........................................................17

*Johnson v. Gambrinus Company/Spoetzl Brewery*,

    116 F.3d 1052 (5th Cir. 1997) .............................................................28

*Keister v. Bell*,

    29 F.4th 1239 (11th Cir. 2022) ............................................................17

*Knox v. Serv. Employees Int'l Union, Local 1000*,

    567 U.S. 298 (2012).............................................................................23

*L.E. v. Superintendent of Cobb Cnty. Sch. Dist.*,

    55 F.4th 1296 (11th Cir. 2022) ...............................................26, 31, 32

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992)..............................................................17, 19, 21

\*PGA Tour, Inc. v. Martin*,

    532 U.S. 661 (2001)..............................................................27, 29, 30

*Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*,

    938 F.3d 1259 (11th Cir. 2019) ....................................................29, 31

*Schwarz v. City of Treasure Island*,

    544 F.3d 1201 (11th Cir. 2008) ....................................................27, 30

*Scott v. Roberts*,

    612 F.3d 1279 (11th Cir. 2010) .........................................................13

*Shotz v. Cates*,

    256 F.3d 1077 (11th Cir. 2001) .........................................................32

*Sierra v. City of Hallandale Beach, Fla.*,

    996 F.3d 1110 (11th Cir. 2021) ....................................................14, 22

\**Silva v. Baptist Health South Fla., Inc.*,

    856 F.3d 824 (11th Cir. 2017) ...............................................31, 32, 34

*W.S. ex rel. Sonderman v. Ragsdale*,

    No. 1:21-cv-01560-TWT (N.D. Ga. Apr. 29, 2021) .......................3, 4

*Speech First, Inc. v. Cartwright*,

    32 F.4th 1110 (11th Cir. 2022) ...........................................................14

*Tamara v. El Camino Hospital*,

    964 F. Supp. 2d 1077 (N.D. Cal. 2013) ..............................................28

*Tennessee v. Lane*,

    541 U.S. 509 (2004) ............................................................................31

*Transunion LLC v. Ramirez*,

    141 S. Ct. 2190 (2021) ........................................................................22

*Unger v. Majorca at Via Verde Homeowners Assoc. Inc.*,

    No. 21-13134, 2002 WL 4542348 (11th Cir. Sept. 29, 2022)............30

*Uzuegbunam v. Preczewski*,

   141 S. Ct. 792 (2021)............................................................22

*Walters v. Fast AC, LLC*,

   60 F.4th 642 (11th Cir. 2023) ..............................................22

*Wong v. Regents of Univ. of Cal.*,

   192 F.3d 807 (9th Cir. 1999) ...........................................27, 30

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,

   247 F.3d 1262 (11th Cir. 2001) .........................12, 14, 17, 19

*Wright v. N.Y. Dep't of Corrs*,

   831 F.3d 64 (2d Cir. 2016) ............................................*passim*

**Federal Statutes**

28 U.S.C. § 1291 ................................................................... viii

28 U.S.C. § 1292(a)(1)........................................................... viii

28 U.S.C. § 1331 ................................................................... viii

28 U.S.C. § 1343 ................................................................... viii

*29 U.S.C. § 794(a) ................................................................26

42 U.S.C. § 12101(a)(3), (b)(1) ...............................................30

*42 U.S.C. § 12132...................................................................26

Americans with Disabilities Act Title II, 42 U.S.C. §§ 12131 et seq...............*passim*

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ................................... *passim*

**Regulations**

*28 C.F.R. § 35.130(b)(7) ......................................................................................26

**Rules**

11th Cir. Rule 26.1-2 ............................................................................................. 1

Federal Rule of Civil Procedure 54 (b) ........................................................... viii, 13

**Other Authorities**

CDC, Operational Guidance for K-12 Schools and Early Care and

    Education Programs to Support Safe In-Person Learning,

    https://www.cdc.gov/coronavirus/2019-ncov/community/schools-

    childcare/k-12-childcare-guidance.html#anchor_1648821092381

    (updated May 11, 2023). ...................................................................................9

Ga. Const. art. VIII, § I, para. I ...............................................................................24

# JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction of the case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction) because this case arises under Title II of the Americans with Disability Act, 42 U.S.C. §§ 12131-34, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(1), because Plaintiffs-Appellants appeal the district court's order denying Plaintiffs-Appellants' Amended Motion for Preliminary Injunction and dismissing A.Z. and C.S. as parties to this case. The district court issued this order on April 4, 2023. Plaintiffs-Appellants timely filed a notice of appeal from the district court's order on May 2, 2023. The district court certified its decision to dismiss A.Z. and C.S. as a final judgment under Federal Rule of Civil Procedure 54 (b) on July 28, 2023. Plaintiffs-Appellants then timely filed an amended notice of appeal on August 18, 2023, to ensure this Court's jurisdiction following the district court's certification of final judgment under Federal Rule of Civil Procedure 54(b).

## STATEMENT OF THE ISSUES

I.   Did the district court err by dismissing Plaintiffs-Appellants A.Z. and C.S. from the case for lack of standing because they no longer attend school in the Cobb County School District ("CCSD"), when they were enrolled in CCSD at the outset of litigation, disenrolled due to ongoing disability discrimination, remain eligible to attend public school in CCSD, and seek both injunctive relief and damages?

II.  Did the district court err by denying Plaintiffs-Appellants' request for preliminary injunction based on a holding that they are not substantially likely to prevail on the merits of their ADA and RA claims?

    A. Did the district court err by holding that CCSD may circumvent the ADA's requirement to conduct an individualized inquiry into facially reasonable accommodation requests so long as CCSD offers an alternative?

    B. Did the district court err by holding that CCSD's alternatives provide Plaintiffs-Appellants B.B. and L.E. with meaningful access to the benefits of an in-person education because L.E. and B.B. can access "some" in-person school?

1

## STATEMENT OF THE CASE

**I.    Statement of the Facts**

<u>Students' Disabilities and Need for Effective Accommodations</u>

Plaintiffs-Appellants L.E., B.B., A.Z., and C.S. (collectively, "Students") are school-aged children with disabilities who are or were enrolled in CCSD. *Order Denying Pls.' Amend. Mot. for Prelim. Injunction* ("Order") [82] at 2. L.E. is a ninth-grade student diagnosed with acute myeloid leukemia as an infant. *Cavorley Decl.* [74-6] at 1-2, ¶¶ 2-3. His chemotherapy treatments have severely weakened his immune system, leading to a diagnosis of hypogammaglobulinemia. *Id.* at 1-2, ¶¶ 3-4. B.B. is a tenth-grade student with Duchenne Muscular Dystrophy, a terminal disease that causes degenerative muscle weakness in the proximal, limb, heart, and respiratory muscles. *Baird Decl.* [74-5] at 1-2, ¶¶ 2-4. His required steroid treatments suppress his immune system and increase his infection risk. *Id.* at 2, ¶ 5. C.S. is an eleventh-grade student with moderate to severe asthma, prone to severe respiratory and sinus infections. *Shirley Decl.* [74-10] at 1-2, ¶¶ 2-4. Finally, A.Z. is a third-grade student with permanent lung damage, chronic bronchitis, persistent asthma, recurrent pneumonias, and impaired airway clearance. *Zeigler Decl.* [74-12] at 1-2, ¶ 2-3.

Because of their disabilities, Students face a higher risk of severe illness, prolonged symptoms, and death from the highly infectious respiratory virus,

COVID-19. *Crater Decl.* [74-7] at 9, ¶ 21; *Yancey Decl.* [74-11] at 17-18, ¶¶ 40-44. COVID-19 is especially transmissible in congregate settings like schools. *Yancey Decl.* [74-11] at 6, ¶ 16. As a result, Students need accommodations to access school in person safely. *Crater Decl.* [74-7] at 8, ¶ 18; *Yancey Decl.* [74-11] at 5-6, 19, ¶¶ 13, 48. Masking as a form of source control is one simple and highly effective accommodation to protect against COVID-19 transmission and other respiratory viruses. *Yancey Decl.* [74-11] at 4, 9-10, ¶¶ 9, 24-27.

<u>CCSD's Failure to Modify or Accommodate: 2021-2022 School Year</u>

In March 2020, CCSD closed its schools for in-person learning due to health and safety concerns from the COVID-19 pandemic. *Bales Decl.*,[1] Ex. 1 [50-8] at 9, ¶ 27. In October 2020, CCSD began phasing students back to school for in-person learning, while continuing to operate a remote learning option. *Id.* at 9-10, ¶¶ 27, 30. To protect its in-person students and employees, CCSD implemented a multi-layered COVID-19 prevention strategy ("COVID-19 safety protocol") as recommended by the Centers for Disease Control and Prevention ("CDC") and Cobb and Douglas

---

[1] This Declaration was made by CCSD's Nursing Supervisor and originally filed in a separate case as support for CCSD's universal mask requirement. *See* Decl. of Melanie K. Bales, in support of Defs' Resp. in Opp'n to Pls.' Mot. for TRO, *W.S. ex rel. Sonderman v. Ragsdale*, No. 1:21-cv-01560-TWT (N.D. Ga. Apr. 29, 2021) (ECF No. [5-1]).

Public Health ("CDPH"), including mandatory physical distancing and universal masking. *Id.* at 3-7, ¶¶ 8-17; *Memark Decl.*,[2] Ex. 2 [50-9] at 5-7, ¶¶ 17-22.

Near the end of the 2020-2021 school year, CCSD required parents to select either in-person or virtual school for their children for the 2021-2022 school year. *Baird Decl.* [2-2] at 3-4, ¶ 12. CCSD informed parents that it would continue to follow CDC and CDPH guidelines for in-person learning during the 2021-2022 school year. *Id.* Based on this information, all four Students elected to attend in-person school. *Baird Decl.* [2-2] at 3-4, ¶ 12; *Cavorley Decl.* [2-3] at 3, ¶¶ 8-9; *Shirley Decl.* [2-4] at 2, ¶ 6; *Zeigler Decl.* [2-5] at 3-4, ¶¶ 6-8.

However, over the summer, CCSD discontinued its COVID-19 safety protocol in favor of a new protocol ("21-22 protocol") that relaxed or abandoned its prior COVID-19 prevention strategies. *Schmidtke Decl.* [2-10] at 4-5, ¶ 7; *Verigan Decl.* [2-11] at 2-3, ¶ 3; *see also Floresta Decl.*, [43-1] at 57-63, Ex.1-B. This new protocol conflicted with the then-current CDC and CPDH guidelines. *McLaughlin Decl.* [2-9] at 3, ¶ 8; *Schmidtke Decl.* [2-10] at 4-5, ¶ 7; *Verigan Decl.* [2-11] at 2-3, ¶ 3. CCSD did not amend its 21-22 protocol, even when case numbers, hospitalizations, and deaths significantly increased across all age groups due to the

---

[2] This Declaration was made by CDPH's Health Director and originally filed in a separate case as support for CCSD's universal mask requirement. *See* Decl. of Dr. Janet Memark, in support of Defs' Resp. in Opp'n to Pls.' Mot. for TRO, *W.S. ex rel. Sonderman v. Ragsdale*, No. 1:21-cv-01560-TWT (N.D. Ga. Apr. 29, 2021) (ECF No. [5-2]).

rapid spread of the COVID-19 Delta variant at the start of the 2021-2022 school year. *Schmidtke Decl.* [2-10] at 6-12, ¶¶ 8-13; *Verigan Decl.* [2-11] at 3-4, ¶¶ 4-5.

At the beginning of the 2021-2022 school year, Students requested that CCSD reimplement the COVID-19 prevention strategies outlined by the CDC and CDPH to allow them to attend school in person safely, given their disabilities, but CCSD refused. *Baird Decl.* [2-2] at 5, ¶ 17; *Cavorley Decl.* [2-3] at 4, ¶ 12; *Shirley Decl.* [2-4] at 5, ¶ 15; *Zeigler Decl.* [2-5] at 3-6, ¶¶ 6-7, 13-14, 17-18. CCSD also refused to allow essential COVID-19 prevention strategies as accommodations for students with disabilities if they conflicted with the 21-22 protocol. *Grimmke Decl.* [50-1] at 2-3, ¶¶ 8-10; *Zeigler Decl.* [50-3] at 2, ¶¶ 5-8. As a result, Students' school nurses, therapists, counselors, and teachers were prohibited from implementing such measures as individual accommodations for Students. *Baird Decl.* [2-2] at 6, ¶ 20; *Grimmke Decl.* [50-1] at 2, ¶ 7; *Zeigler Supp. Decl.* [50-3] at 2, ¶¶ 3-8.

Students could not safely attend school in person without accommodations or modifications to CCSD's 21-22 protocol. *Crater Decl.* [2-6] at 11, ¶ 37; *Baird Decl.* [2-2] at 6, ¶ 21; *Cavorley Decl.* [2-3] at 3, ¶ 9; *Zeigler Decl.* [2-5] at 6, ¶ 19. L.E. did not attend a single day of in-person school during the 2021-2022 school year. *Cavorley Decl.* [2-3] at 3, ¶ 10; *Cavorley Decl.* [74-6] at 3, ¶ 8. B.B., A.Z., and C.S. stopped attending in-person school in August 2021. *Baird Decl.* [2-2] at 6, ¶¶ 19-21; *Shirley Decl.* [2-4] at 3, ¶ 10; *Zeigler Decl.* [2-5] at 4, ¶ 8. B.B. and C.S. did not

return for the remainder of the year. *Baird Decl.* [74-5] at 4, ¶ 13; *Shirley Decl.* [74-10] at 2, ¶ 6. A.Z. returned to in-person school in February 2022 without her requested accommodations because she was so far behind academically. *Zeigler Decl.* [74-12] at 5, ¶ 20. While at home, Students received little to no support or instruction from CCSD. *Baird Decl.* [74-5] at 3-4, ¶¶ 10-13; *Cavorley Decl.* [2-3] at 3-4, ¶¶ 11-12; *Cavorley Decl.* [74-6] at 2, ¶ 7; *Shirley Decl.* [74-10] at 2, 4 ¶¶ 6, 17-18; *Zeigler Decl.* [74-12] at 3, ¶ 8. Students wanted to return to school and would have returned with modified policies and practices, as requested. *Baird Decl.* [2-2] at 7, ¶¶ 26-27; *Cavorley Decl.* [2-3] at 5, ¶¶ 23-24; *Shirley Decl.* [2-4], 5, ¶¶ 18-19; *Zeigler Decl.* [2-5] at 8, ¶¶ 26-27.

<u>CCSD's Failure to Accommodate: 2022-2023 School Year</u>

L.E. and B.B. returned to school in person for the 2022-2023 school year, without their requested accommodations. *Cavorley Decl.* [74-6] at 3, ¶¶ 8-9; *Baird Decl.* [74-5] at 4-5, ¶¶ 14, 19. The only COVID-19 safety measures prescribed by CCSD for the 2022-2023 school year were sanitation, handwashing, and surface cleaning. *Cobb Schools Public Health Protocols*, Ex. 1 [74-2]. To accommodate his safe return to school, L.E. requested that students and teachers in his classroom wear masks. *Cavorley Decl.* [74-6] at 3, ¶ 9. CCSD refused to consider his request. *Id*. And CCSD informed B.B.'s parent several times that B.B.'s education planning

team "could not consider [his requested COVID-19] accommodations because of district policy." *Baird Decl.* [74-5] at 5, ¶ 19.

L.E. only attended "some in person schooling between August and December 2022." *Order*, [82] at 14. He attended school on a modified schedule, leaving at 12:30 p.m. daily. *Cavorley Decl*. [74-6] at 3, ¶ 8. Even so, he missed twenty-one school days due to illness in November and December 2022. *Id.* at 3, ¶ 10. He moved to a home-based placement in January 2023, where he received a maximum of three hours per week of services, based on his doctor's certification that he was at "high risk for severe infection." *Id.* at 3-4, ¶¶ 11-12. B.B. attended school in person for most of the 2022-2023 school year, but moved to a home-based placement from November 1, 2022, until November 18, 2022, after contracting COVID-19. *Baird Decl.* [74-5]. at 4, ¶¶ 15-17. His teacher tested positive for COVID-19 on January 18, 2023. *Baird Decl.* [74-5] at 5, ¶ 18. L.E. and B.B.'s parents are concerned for their children's safety at school. *Cavorley Decl.* [74-6]. at 4-5, ¶¶ 14-15; *Baird Decl.* [74-5] at 5, ¶ 18.

C.S. and A.Z. enrolled in private schools for the 2022-2023 school year because of CCSD's continued failure to accommodate them. *Shirley Decl.* [74-10] at 2, ¶ 7 *Zeigler Decl.* [74-12] at 6, ¶¶ 22-23. A.Z.'s private school placed her in a remedial program because she was so far behind academically. *Zeigler Decl.* [74-12] at 6, ¶ 24. A.Z. and C.S. still live within CCSD's boundaries but cannot safely

return while CCSD refuses to accommodate them. *Shirley Decl.* [74-10], at 5, ¶ 25;

*Zeigler Decl.* [74-12] at 6, ¶ 25.

Harm to Students

Since August 2021, Students have collectively lost hundreds of days of in-

person learning, predominantly because of CCSD's failure to accommodate them:

|  | *In Person School Days Missed: 21-22 School Year* | *In Person School Days Missed: 22-23 School Year*[3] |
|---|---|---|
| **L.E.** | 180 school days. *Cavorley Decl.* [2-3] at 3, ¶ 10; *Cavorley Decl.* [74-6] at 3, ¶ 8. | 93 school days. *Cavorley Decl.* [74-6] at 3-4, ¶¶ 10, 12, Ex. A. |
| **B.B.** | 162 school days. *Baird Decl.* [2-2] at 5-6, ¶¶ 18-21; *Baird Decl.* [74-5] at 5, ¶ 13. | At least 14 school days. *Baird Decl.* [74-5] at 4, ¶ 16. |
| **A.Z.** | 112 school days. *Zeigler Decl.* [74-12] at 3, ¶ 8. | Enrolled in private school. *Zeigler Decl.* [74]-12 at 6, ¶ 22-23. |
| **C.S.** | 170 school days. *Shirley Decl.* [74-10] at 2 ¶¶ 6, 17-18. | Enrolled in private school. *Shirley Decl.* [74]-10 at 5, ¶ 22. |

Students fell behind academically and lost educational and social opportunities as a

result. *Baird Decl.* [74-5] at 7-8, ¶ 25, 28; *Cavorley Decl.* [74-6] at 4, ¶¶ 12-13;

*Shirley Decl.* [74-10] at 4-5, ¶¶ 17-21; *Zeigler Decl.* [74-12] at 5, ¶¶ 17-18. They

also experienced isolation, segregation, embarrassment, frustration, loneliness, fear

of failure, anxiety, and depression. *Baird Decl.* [74-5] at 6, ¶¶ 23-24, 28; *Cavorley*

*Decl.* [74-6] at 4-5 ¶ 17; *Shirley Decl.* [74-10] at 5, ¶ 21; *Zeigler Decl.* [74-12] at 4-

---

[3] These calculations are as of March 3, 2023, when Plaintiffs filed their Amended
Motion. All calculations are based on a 180-day school year.

5 ¶¶ 15, 18. And without accommodations, Students still cannot safely attend in-person school in CCSD. *Crater Decl.* [74-7] at 8, ¶ 18; *Yancey Decl.* [74-11] at 5, 19, ¶¶ 13, 48.

## Requested Relief

As redress for the harms they experienced and continue to experience, Students seek damages and injunctive relief requiring CCSD to modify its policy and accommodate Students by implementing existing CDC guidelines and maintaining consistency with those guidelines in the event of subsequent changes. *Compl.* [1] at 45-46. Although CDC guidelines have changed since Students filed this case in October 2021, CCSD policy remains in conflict with that guidance. *Crater Decl.* [74-7] at 7-8, ¶¶ 17-18.

The current CDC guidelines for K-12 schools now follow the CDC's general guidelines, which recommend varying COVID-19 prevention strategies depending on the "Community [COVID-19] Level"[4] of the county where the school sits. *Crater Decl.* [74-7] at 8-9, ¶ 20. However, the CDC continues to recognize that students with disabilities may need additional protections and recommends that, regardless

---

[4] On February 25, 2022, the CDC issued "Community Level Guidelines," which established new metrics based on hospital admission levels to measure the local community impact of COVID-19. *See* CDC, Operational Guidance for K-12 Schools and Early Care and Education Programs to Support Safe In-Person Learning, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-childcare-guidance.html#anchor_1648821092381 (updated May 11, 2023).

of "Community Level," "[a]dministrators . . . consider additional prevention strategies to accommodate the health and safety of students with disabilities and protect their civil rights and equal access to safe in-person learning." *Yancey Decl.* [74-11] at 18, ¶ 45. According to the CDC, "Schools might need to require masking . . . to ensure that students with immunocompromising conditions or other conditions that increase their risk for getting very sick with COVID-19 can access in-person learning." *Crater Decl.* [74-7] at 7, ¶ 17.

Despite this guidance, CCSD policy continues to preclude any discussion or consideration of accommodations that run counter to CCSD's district-wide health protocols. *Baird Decl.* [74-5] at 3, 5, ¶¶ 9, 19; *Cavorley Decl.* [74-6] at 3, ¶ 9; *Shirley Decl.* [74-10] at 2-3, ¶¶ 8-9; *Zeigler Decl.* [74-12] at 3-4, ¶¶ 10-14; *Grimmke Decl.* [74-8] at 3, ¶¶ 9-12.

## II.    Course of Proceedings and the District Court's Order

On October 1, 2021, Students filed a Complaint in the district court, alleging that CCSD violated the ADA and RA. *Compl.* [1] at 40-45. Students' Complaint requested declaratory relief, injunctive relief, and damages. *Id.* at 45-46. Students simultaneously filed a Motion for Temporary Restraining Order and Preliminary Injunction. *Pls.' Mot. for T.R.O. and Prelim. Inj.*, [2] ("Motion"). On October 15, 2021, the district court issued an order denying Students' Motion. *Order Denying Motion*, [54]. Students timely filed a notice of appeal to this Court, *Notice of Appeal*

10

[55], and on December 2, 2021, the district court issued an order staying the case pending appeal. *Order Granting Stay* [61].

On December 16, 2022, this Court issued an opinion reversing and remanding the case to the district court. *Opinion* [65]. This Court reversed the district court's denial of Students' Motion because the district court erred by (1) impermissibly redefining the program at issue and only considering whether Students had meaningful access to an education generally rather than in-person education; and (2) failing to analyze Students' claims under an *Olmstead* theory of unjustified isolation, which does not require a showing of disparate treatment and can arise from a facially neutral, uniformly applied policy. *Id.* at 10-14. This Court also held that Students' appeal was not moot, despite changes to CDC guidelines for COVID-19 spread prevention in K-12 schools, because Students alleged continued noncompliance with those guidelines, and their requested relief remained available. *Id.* at 6-7.

On remand, at a status conference on February 22, 2023, the district court ordered Students to submit an Amended Motion for Preliminary Injunction. *Pls.' Amend. Mot. for Prelim. Inj.* [74] ("Amended Motion"). On April 4, 2023, following the submission of Students' Amended Motion and briefing by both parties, the district court issued an Order denying Students' Amended Motion and dropping Plaintiffs A.Z. and C.S. from the case. *Order* [82].

11

In support of the decision to drop A.Z. and C.S. as parties to the action, the district court explained that "because Plaintiffs A.Z. and C.S. no longer attend Cobb County public schools, they lack standing in this case." *Id.* at 8 (footnote omitted). Specifically, the district court found that A.Z. and C.S. cannot make out an injury in fact because they "cannot show 'a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct of Defendants." *Id*. at 8 n.3 (applying language from *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001)). The district court further found that "because they no longer attend Cobb County public schools, any injunctive relief the Court may grant would not redress A.Z. and C.S.'s alleged injuries." *Id*. The district court did not address their standing to seek damages. *Id*. And the district court did not find that L.E. or B.B. lacked standing to proceed, even though L.E., B.B., A.Z., and C.S. alleged identical legal injuries arising from CCSD's unlawful policy and practice. *See generally id.*

In denying Student's Amended Motion, the district court also held that Students failed to show a substantial likelihood of success on the merits of their claims. *Id.* at 19. While the district court found that mandatory masking "could constitute a reasonable accommodation," the district court also held that the ADA and RA do not obligate CCSD to consider Students' request for such an accommodation because other "accommodations" were offered. *Id*. at 12-13. The district court again characterized virtual school as an appropriate "accommodation"

12

for Students. *Id.* at 14, 18. It held that because Students "voluntarily chose[] online learning or [homebound] services," they were not unjustifiably isolated under *Olmstead*. *Id.* at 19.

On April 12, 2023, Students requested clarification from the district court on whether Plaintiffs A.Z. and C.S. were dropped from the Amended Motion only or the entire case. *Pls.' Mot. for Clarification* [85]. The district court clarified that it had entirely dropped A.Z. and C.S. from the case. *Order on Mot. for Clarification* [87]. On May 2, 2023, Students filed their notice of appeal, *Notice of Appeal* [88]. On May 3, 2023, the district court again stayed the case. *Order Granting Stay* [91]. On July 28, 2023, the district court certified its April 4, 2023, decision to drop A.Z. and C.S. as parties to the case as a final judgment under Fed. R. Civ. P. 54 (b). *Order Certifying Final Judgment* [96]. Students filed an Amended Notice of Appeal on August 18, 2023. *Amend. Notice of Appeal* [98]. CCSD has not yet filed an Answer or responded to Students' Complaint.

## III. Standard of Review

This Court reviews a district court's order denying a preliminary injunction for abuse of discretion. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010). Courts review a district court's findings of fact for clear error and review legal conclusions *de novo*. *Id*. In this case, the district court's legal conclusions and application of the law are at issue. "A district court by definition abuses its discretion

13

when it makes an error of the law." *In re Managed Care Litigation*, 605 F.3d 1146, 1150 (11th Cir. 2010) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

The issue of standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007) (citations omitted); *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1280 (11th Cir. 2001) ("[Standing] is a threshold determination that is conceptually distinct from whether the plaintiff is entitled to prevail on the merits."). A district court's dismissal of a case for lack of standing is reviewed *de novo* by this Court. *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1268 (11th Cir. 2006)). Where, as here, a case has not progressed past the pleading stage, "general factual allegations of injury" may suffice to establish standing so long as they "plausibly and clearly allege a concrete injury." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc)).

## SUMMARY OF THE ARGUMENT

Students challenge the district court's dismissal of A.Z. and C.S. as parties to this case and its denial of Students' request for preliminary injunction.

The district court erred for three reasons when it dismissed A.Z. and C.S. from the case for lack of standing. First, the district court conditioned its holding that A.Z. and C.S. lack standing on their disenrollment from CCSD almost a year after they filed their case. This led to a flawed analysis, because standing is assessed based on the facts at the *outset* of the litigation and cannot be divested by subsequent events. Second, the district court's conclusion that A.Z. and C.S. lack standing ignores their request for damages, which gives them standing to proceed regardless of their enrollment status. Third, if the district court intended to dismiss A.Z. and C.S. on mootness grounds, it still erred, because A.Z. and C.S.'s claims for damages plainly constitute a concrete interest in the outcome of this litigation. And as children with disabilities living within CCSD's boundaries, A.Z. and C.S. remain entitled to an equal opportunity to access public schools in CCSD—an opportunity CCSD continues to deny them.

The district court also erred when it denied Students' request for a preliminary injunction on grounds that they are not substantially likely to prevail on the merits of their claims. In reaching this conclusion, the district court erred in two ways. First, the ADA and RA impose an obligation on public entities to conduct an "individualized inquiry" into an individual's disability accommodation request unless it is unreasonable on its face. Here, the district court specifically held that Students' request for masking is not facially unreasonable, but it held that CCSD

15

may circumvent its obligation to consider it. Second, the district court's holding that B.B. and L.E. were provided "meaningful access" is erroneous as a matter of law because, as the district court found, B.B. only participated in "70% of possible school days," while L.E. only participated in "some in-person schooling between August and December 2022." Limited participation, or impediments to full access, do not constitute "meaningful access" under the ADA and RA.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The district court erred by dismissing A.Z. and C.S. as parties to this case.

Over a year after Students filed their Complaint, the district court held that A.Z. and C.S. lost standing to seek *any* relief against CCSD "because [they] no longer attend Cobb County public schools." *Order* [82] at 8. This analysis failed to analyze standing based on the facts at the outset of the litigation and ignored A.Z. and C.S.'s standing to seek damages. Even if the district court intended to dismiss A.Z. and C.S. for mootness, not standing, it still erred because they maintain a concrete interest in the outcome of the litigation.

### A.    The district court failed to analyze standing based on the facts at the outset of litigation.

Standing hinges on whether, at the *commencement* of litigation, the plaintiff has "'allege[d] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction . . . ." *Focus on the Fam. v. Pinellas*

16

*Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (quoting *Village of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 260-61 (1977) (citations omitted)). To establish the requisite "personal stake," plaintiffs must show an injury in fact—invasion of a legally protected interest—that is (i) concrete and particularized and actual or immediate (not conjectural or hypothetical), (ii) traceable to the challenged conduct of the defendant, and (iii) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). For injunctive relief, plaintiffs cannot rely on allegations of past injury alone; they must also show a substantial likelihood of future injury. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). Courts must determine if these elements are satisfied "as of the time at which a plaintiff's complaint is filed." *Focus on the Fam.*, 344 F.3d at 1275; *see also Lujan*, 504 U.S. at 569 n.4 (explaining the Supreme Court's "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed.").

Events that occur after the filing of a complaint do not divest a plaintiff of standing, even for injunctive relief. *Focus on the Fam.*, 344 F.3d at 1275-76 (finding standing where a real and immediate threat of future injury existed at the outset of the case, even though the date of the alleged future injury had since passed); *Keister v. Bell*, 29 F.4th 1239, 1256-57 (11th Cir. 2022) (finding standing even where the challenged policy was superseded after the case was filed); *Johnson v. Bd. of Regents*

*of Univ. of Ga.*, 263 F.3d 1234, 1267 (11th Cir. 2001) (holding that the effects of subsequent events are analyzed under principles of mootness, not standing); *see also Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction."). Indeed, courts have rejected arguments that student-plaintiffs lose standing to pursue injunctive relief against school districts by deciding to attend school elsewhere. *See*, *e.g.*, *Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cnty.*, 766 F.2d 1391, 1399 (10th Cir. 1985) ("We do not believe that principles of standing require plaintiffs to remain in a hostile environment to enforce their constitutional rights."); *Freedom from Religion Foundation, Inc. v. New Kensington Arnold School District*, 832 F.3d 469, 480-91 (3rd Cir. 2016) (holding that a parent's decision not to send her child to the defendant school district did not deprive her of standing for injunctive relief).

Neither the district court nor CCSD has challenged that A.Z. and C.S. alleged facts sufficient for standing when they filed their Complaint. Indeed, A.Z. and C.S. allege near identical facts as L.E. and B.B., who remain parties to this case. Instead, the district court explicitly relied on A.Z. and C.S.'s disenrollment from CCSD over one year later to conclude that they *now* lack standing. The district court's failure to determine standing based on the facts at the outset of litigation confused its entire

analysis and corrupted its conclusion that A.Z. and C.S. lack standing to seek injunctive relief.

In holding that A.Z. and C.S. "lack standing under *Lujan*," the district court first held that they cannot make out an injury in fact because they "cannot show a sufficient likelihood that they will be affected by the unlawful conduct of the defendants." *Order* [82] at 8, n.3 (incorrectly applying language from *Wooden*, 247 F.3d at 1284 and *Lujan*, 504 U.S. at 561). Relatedly, it held that "because they no longer attend Cobb County public schools, any injunctive relief the Court may grant would not redress A.Z. and C.S.'s alleged injuries." *Id*. But at the *outset of litigation*, A.Z. and C.S. were enrolled in CCSD and alleged *present and ongoing* injuries caused by CCSD's ongoing unlawful conduct. *See Compl*. [1]. Relying on these circumstances, as the district court should have done, A.Z. and C.S. satisfy the injury in fact and redressability requirements for injunctive relief.

To establish an injury in fact for injunctive relief, plaintiffs who have only alleged past injuries or possible future injuries must show a "sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future," or, in other words, "a substantial likelihood" of future injury. *Wooden*, 247 F.3d at 1283-84 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95,102 (1983)). This is because "a prospective remedy will provide no relief for an injury that is, and will likely remain, entirely in the past." *Id*. (citations omitted). However, plaintiffs need not show a

19

likelihood of future injury for standing to seek injunctive relief when they allege current, ongoing injuries. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (explaining that *Lyons* was inapposite where plaintiffs alleged a "current injury" that "was at that moment capable of being redressed by injunctive relief"); *see also Lyons*, 461 U.S. at 102 ("[P]ast exposure to illegal conduct does not demonstrate a present case or controversy *if unaccompanied by present, continuing effects*.") (emphasis added)). Put another way, allegations of ongoing injury satisfy the "substantial likelihood of future injury" standard. *See*, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (considering *Lyons* and finding an injury in fact for injunctive relief where allegedly unlawful conduct was occurring at the time the complaint was filed).

Like L.E. and B.B., A.Z. and C.S. allege injuries that were current and ongoing at the outset of litigation, including denial of their requested accommodations, denial of access to CCSD's in-person education program and its benefits, isolation and segregation at home, lost educational opportunities, frustration, embarrassment, anxiety, and depression. These injuries began at the start of the 2021-2022 school year, when CCSD refused to allow them access to their in-person education by modifying its 21-22 protocol or otherwise accommodating their disabilities in school. And when they filed their Complaint in October 2021, as enrolled students in CCSD, the challenged conduct that led to their injuries—

CCSD's refusal to accommodate them—was concededly ongoing and therefore certain to recur. Because CCSD's unlawful conduct and A.Z. and C.S.'s resulting injuries were ongoing when the Complaint was filed, A.Z. and C.S.'s alleged injuries provide standing for injunctive relief.

To establish redressability, plaintiffs must simply show that their requested relief is likely to redress their injury. *See Lujan*, 504 U.S. at 561. And when a plaintiff is "injured or threatened with injury due to illegal conduct ongoing at the time of suit, [relief] that effectively abates the conduct and prevents its recurrence provides a form of redress." *Laidlaw*, 528 U.S. at 169. When A.Z. and C.S. filed their Complaint, they were isolated at home because CCSD refused to accommodate them at school. An order requiring CCSD to provide Students' requested accommodations—CDC-endorsed COVID-19 prevention strategies—would have allowed them to return to school. Thus, contrary to the district court's holding, injunctive relief would have redressed their injuries.

The circumstances at the outset of litigation afford A.Z. and C.S. standing to seek injunctive relief. They allege ongoing injuries in fact that injunctive relief would redress. Although the district court did not take up the question of traceability, A.Z. and C.S. also allege that CCSD's refusal to provide them with necessary and reasonable accommodations led to their injuries. These allegations satisfy the traceability standard for standing, which is "not an exacting standard . . . [and] is

'less stringent' than the tort-law concept of 'proximate cause.'" *See Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019)); *see also Focus on the Fam.*, 344 F.3d at 1273 ("[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes."). That A.Z. and C.S. have disenrolled from CCSD since filing their Complaint does not divest them of standing, even for injunctive relief.

B. <u>Students' claims for injunctive relief notwithstanding, the district court erred by dismissing A.Z. and C.S. without considering their standing to pursue damages.</u>

"[S]tanding is not dispensed in gross . . . ." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Whether a plaintiff has satisfied the elements of standing, particularly whether a plaintiff has demonstrated a redressable injury in fact, depends on the type of relief sought. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1113 (11th Cir. 2021). Although allegations of past injury alone do not satisfy the injury in fact requirement for *injunctive* relief, when a plaintiff seeks damages, the court must consider past harm. *See id*. Compensatory damages are available under the ADA and RA and redress qualified persons with disabilities for past harms resulting from disability discrimination. *See Fry v. Napolean Cmty. Schs.*, 580 U.S. 154, 160 (2017). Nominal damages can also redress past injuries. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

The district court's analysis centers entirely around A.Z. and C.S.'s standing to seek injunctive relief. However, A.Z. and C.S. also seek compensatory and nominal damages. And they allege past harms and ongoing injury. When Students filed their Complaint, they had *already* been denied reasonable accommodations and access to in-person school for nearly two months. These allegations afford them standing to seek damages.

C. <u>If the district court intended to dismiss A.Z. and C.S. on mootness grounds, its decision was still legal error.</u>

While the Supreme Court has described mootness as "the doctrine of standing, set in a time frame," it has clarified that "careful reflection . . . reveals that this description of mootness is not comprehensive." *Laidlaw*, 528 U.S. at 698-99 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n. 22 (2000)). Although plaintiffs must establish standing, defendants bear "the formidable burden" of proving mootness. *Id*. at 709. And a "case becomes moot only when it is impossible for a court to grant '*any* effectual relief whatever' to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012) (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations omitted)) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of litigation, the case is not moot." *Id*. (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984)) (internal quotation marks omitted).

23

By dismissing A.Z. and C.S. based on an event after the filing of their Complaint, the district court conflated standing with mootness. But these doctrines are distinct, and as this Court has already held, this case is not moot. *See Opinion* [65]. A.Z. and C.S. maintain a concrete interest in the outcome of this litigation, despite their disenrollment from CCSD. As an initial matter, their claims are not moot because they seek damages. *See Burke v. Hillsborough Cnty. Sch. Bd*., 752 F. App'x. 713, 717 (11th Cir. 2018) (holding that a student's request for money damages from a school district was not moot where he moved out of state).

A.Z. and C.S.'s claims for injunctive relief are not moot either. A claim for injunctive relief may become moot if "there is no reasonable expectation that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Dow Jones & Company, Inc. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001) (citations omitted). However, here the alleged violation and its effects remain ongoing. Despite disenrolling from CCSD, A.Z. and C.S. remain entitled to a free, public education from CCSD as school-aged children who live in Cobb County, Georgia. *See* Ga. Const. art. VIII, § I, para. I; *see also Goss v. Lopez*, 419 U.S. 565, 574 (1975) (holding that students have a legitimate entitlement to public education). They remain qualified individuals with disabilities under the ADA because they meet "essential eligibility requirements for the receipt of services" from CCSD. *See* 42 U.S.C. § 12131(2). But

they have been and continue to be denied meaningful access to this entitlement and opportunity because of CCSD's policy and practice precluding necessary and effective accommodations. They disenrolled from CCSD *because of* this policy and practice. And as this Court has already held,

> A judgment in their favor would grant meaningful relief by requiring CCSD to follow [CDC] guidance on accommodating students with disabilities under the ADA and [RA] as it is updated – a practice the Students claim CCSD refuses to do.[5]

*Opinion* [65] at 8.

The district court barred A.Z. and C.S. from seeking *any* relief in this case because they mitigated the harm caused by CCSD's ongoing discrimination. This decision effectively allows school districts to avoid any liability under the ADA and RA so long as they can push students with disabilities out of public school prior to the resolution of litigation. And it forces students with disabilities to subject themselves to ongoing disability discrimination to retain standing to proceed. The decision to dismiss A.Z. and C.S. from the case must be reversed.

---

[5] A.Z. and C.S. had already disenrolled from CCSD and enrolled in private school when this Court issued its December 16, 2022, Opinion finding that this case was not moot regarding preliminary injunctive relief.

**II.    The district court erred by denying students' request for preliminary injunction based on its holding that they are not substantially likely to prevail on their ADA and RA claims.**

A. <u>The district court erred by holding that CCSD may circumvent their obligation to conduct an individualized inquiry into facially reasonable accommodation requests so long as CCSD offers an alternative.</u>

Under the ADA and RA,[6] a qualified individual with a disability cannot be denied the opportunity to participate in, and access the benefits of, public services, programs, and activities. 29 U.S.C. § 794(a); 42 U.S.C. § 12132. To satisfy this requirement, public entities and federal funds recipients must provide reasonable modifications or accommodations to individuals with disabilities to allow them meaningful access to public programs, activities, and services. 28 C.F.R. § 35.130(b)(7); *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Students with disabilities are entitled to reasonable accommodations that afford them meaningful access to an "*in-person* education." *L.E. v. Superintendent of Cobb Cnty. Sch. Dist.,* 55 F.4th 1296, 1302-03 (11th Cir. 2022) (emphasis in original). Failure to provide reasonable accommodations to allow for meaningful access is disability discrimination and violates the ADA and RA. *Fry,* 580 U.S. at 159-60; *Holly v. Clairson Indus., LLC.,* 492 F.3d 1247, 1262 (11th Cir. 2007).

---

[6] ADA and RA claims are governed by the same substantive standard. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

When an individual with a disability requests an accommodation or modification, "an *individualized inquiry* must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001) (emphasis added); *cf. Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008) (holding that a defendant must "conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law"). "[O]nce a disabled [person] requests a non-frivolous accommodation, the accommodation should not be denied without an individualized inquiry into its reasonableness." *Wright v. N.Y. Dep't of Corrs*, 831 F.3d 64, 78 (2d Cir. 2016).

This individualized inquiry allows the individual with a disability and the public entity to "gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary to enable [the individual to meet the standards in question]." *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (citations omitted) (alterations in original). Public entities may not sidestep this requirement and instead "survey the universe of possible accommodations or modifications and determine for the individual, what, in its estimation, is the best or most 'reasonable,' approach." *Alboniga v. Sch. Bd. of Broward Cnty. Fla.*, 87 F. Supp. 3d 1319, 1339-40 (S.D. Fla. 2015) (citing *U.S.*

27

*Airways v. Barnett*, 535 U.S. 391, 402 (2022)). Under the ADA, the analysis "must focus only on whether the requested accommodation is reasonable under the *specific circumstances* particular to the individual in question." *Id.* at 1341 (emphasis added).

Thus, "blanket bans" that preclude consideration of particular accommodations violate the ADA, unless such accommodations are not "facially reasonable." *Wright*, 831 F.3d at 78 (holding that a prison's blanket ban on motorized wheelchairs violates Title II); *see also Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 309 (1st Cir. 2003) (holding that the defendant's "unbending 'refusal to reconsider' policy[,] as applied, is overinclusive"); *Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052, 1064 (5th Cir. 1997) (holding that a failure to consider modifications to a "blanket no animals policy" violated the ADA); *Tamara v. El Camino Hospital*, 964 F. Supp. 2d 1077, 1086 (N.D. Cal. 2013) (granting preliminary injunction against defendant who "deprived [plaintiff] of her service animal without an individualized assessment").

Here, unrefuted evidence establishes that CCSD has a categorial ban on certain COVID-19 prevention strategies, particularly mandatory masking,[7] and it refuses to consider them even as individualized accommodations. *See generally*

---

[7] Students have explained that their motion does not seek universal or school-wide masking, but rather Students seek consideration of tailored masking on an individualized, case-by-case basis, as the CDC recommends, and the U.S. Department of Education requires. *See Pls.' Reply to Pls.' Amend. Mot. for TRO and Prelim. Inj.* [79] at 5-6.

*Defs' Resp. to Pls.' Amend. Mot. for TRO and Prelim. Inj.* [75] (failing to raise a demur, denial, or evidence challenging Students' allegation that CCSD categorically precludes consideration of masking as an accommodation). Further, the district court correctly found that Students' requested accommodation of masking itself is "not facially unreasonable" and "*could* constitute a reasonable accommodation." *See Order* [82] at 12 (emphasis in original). However, it then concluded that CCSD need not consider it. This conclusion from the district court was legal error. The ADA requires CCSD to conduct an individualized inquiry into Students' facially reasonable accommodation requests. *See PGA Tour*, 532 U.S. at 688; *Wright*, 831 F.3d at 78.

According to the district court, CCSD argues that it need not conduct an individualized inquiry because "the law permits schools to choose the accommodations they provide, so long as they are reasonable and provide meaningful access to the benefit." *See Order* [82] at 12-13. However, this argument misconstrues the appropriate analysis and negates the purpose of the ADA. The ADA does not grant school districts deference to choose its preferred alternatives. Under the ADA, the focus must first be on the plaintiff's requested accommodation, not the public entity's "alterative accommodations." *See Schaw v. Habitat for*

29

*Humanity of Citrus Cnty., Inc.*, 938 F.3d 1259, 1269 (11th Cir. 2019)[8] ("The court should have looked first to the reasonableness of [the plaintiff's] own proposed accommodation before considering any outside evidence."); *see also Unger v. Majorca at Via Verde Homeowners Assoc. Inc.*, No. 21-13134, 2002 WL 4542348, at *3-4 (11th Cir. Sept. 29, 2022) (holding that the court should have first considered the plaintiff's own requested accommodation).

Furthermore, Congress passed the ADA to eliminate discrimination against "individuals" with disabilities that specifically persists in areas such as "education." *See* 42 U.S.C. § 12101(a)(3), (b)(1); *PGA Tour*, 532 U.S. at 688. "[R]efusal to consider [Students'] personal circumstances in deciding whether to accommodate [their] disability runs counter to the clear language and purpose of the ADA." *See PGA Tour*, 532 U.S. at 688. Additionally, by failing to even consider Students' requested accommodation, CCSD cannot claim that it is entitled to any deference. *See Wong*, 192 F.3d at 818; *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d. 178, 191 (2d Cir. 2015). CCSD's refusal to conduct an "individualized inquiry" into Students' accommodation requests violates the ADA and RA. *See PGA Tour*, 532 U.S. at 688. Such refusals become even more problematic when, as here, the public entity's alternatives are ineffective.

---

[8] In assessing reasonable accommodation claims, courts analyze case law under the ADA, RA, and Fair Housing Act (FHA). *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1220 (11th Cir. 2008).

B. <u>The district court erred by holding that CCSD's alternatives are effective in providing B.B. and L.E. with meaningful access to the benefits of an in-person education.</u>

The ADA and RA obligate public entities and federal funds recipients to remove barriers to accessibility by making reasonable modifications and accommodations for individuals with disabilities. *Tennessee v. Lane*, 541 U.S. 509, 511 (2004) (citing 42 U.S.C. § 12132). An accommodation is "reasonable" if it is effective and does not cause a fundamental alteration to the nature of the program or impose undue burdens on the entity. *Schaw*, 938 F.3d at 1265. "The hallmark of a reasonable accommodation is effectiveness." *Wright*, 831 F.3d at 73 ("A reasonable accommodation must provide effective access to [public] activities and programs.").

An accommodation is effective if it provides an individual with a disability meaningful access to the public entity's programs and benefits. *Choate*, 469 U.S. at 301. Meaningful access requires that the individual with a disability receives an "equal opportunity to gain the same benefit as his nondisabled peers." *A.L. by and through D.L. v. Walt Disney Parks and Resorts U.S., Inc.*, 900 F.3d 1270, 1295 (11th Cir. 2018) (quoting *Argenyi v. Creighton Univ.*, 703 F.3d 441, 449 (8th Cir. 2013)). The fact that a person with a disability can ultimately access the public benefit is not enough when the person nevertheless faces impediments to such access, as the "ADA and RA focus not on quality of [the benefit] or the ultimate [ ] outcome, but on the equal opportunity to *participate* in obtaining and utilizing services." *Silva v.*

31

*Baptist Health South Fla., Inc.*, 856 F.3d 824, 833-34 (11th Cir. 2017) (emphasis in original) ("[T]he correct standard examines whether the [plaintiff] experiences an impairment in his or her ability to [access the defendant's services].”); *see also Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (holding that accommodations are insufficient if a person with a disability still faces impediments to their ability to participate, "regardless [of] whether the disabled person manages in some fashion to attend").

Furthermore, "limited participation" in activities does not equate to meaningful access. *Wright*, 831 F.3d at 73 (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)); *Silva*, 856 F.3d at 835 (holding that a hospital's communication accommodations were ineffective because deaf plaintiffs were limited in informational exchanges as compared to hearing patients). A defendant's alternative accommodation is unreasonable "if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." *Wright*, 831 F.3d at 73. "In short, providing meaningful access requires just that—granting [individuals with disabilities] *meaningful* participation in [public] activities and programs." *Id.*

Here, Students are entitled to *effective* accommodations that allow them meaningful access to their "in-person education." *See L.E.,* 55 F.4th at 1302-03. For B.B. and L.E., the district court erroneously held that CCSD's "accommodations"

32

have been effective. *See Order* [82] at 14. In support of this conclusion, the district court made specific findings regarding the amount of participation of in-person schooling that B.B. and L.E. were able to access. *Id.* at 14. First, the court found that "B.B. has attended in-person for more than 70% of possible school days." *Id.* However, if one school semester is ninety days, B.B. missed approximately twenty-seven school days (i.e., 30%) of in-person learning in a semester. *See id.* Second, even though L.E. was not attending in-person school because of a high risk of illness at the time the district court issued its order, the district court found that L.E. "attended some in-person schooling between August and December 2022." *Id.* While the term "*some* in-person schooling" is unclear, what is clear from the record is that in the months of November and December 2022 alone, L.E. missed twenty-one school days. *See id.* (emphasis added); Cavorley Decl. [74-6] at 3, ¶ 10.

CCSD's offer to clean B.B. and L.E.'s classrooms and keep them separated from their peers during class, bathroom breaks, lunch, and transitions are not *effective* alternatives[9] sufficient to allow B.B and L.E. meaningful access to an in-person education. *See Order* [82] at 13. Based on the district court's findings, B.B. and L.E. still suffered impediments to an equal opportunity to participate in an in-

---

[9] There is no evidence in the record showing, nor does the district court explain, how CCSD's alternatives are effective replacements to Students' request for individual, close-contact masking, which is the most effective tool against COVID-19 in that it blocks viral respiratory particles produced from an infected person. *See* Yancey Decl. [74-11] at 4, ¶ 9; Crater Decl. [74-7] at 8-9, ¶¶ 19-21.

person education. *See Silva*, 856 F.3d at 833-34. They are deterred from attending school in person out of fear for their health and safety and relegated to *limited participation* in an in-person education. *See id.* at 835; *Wright*, 831 F.3d at 73 (holding that an accommodation is inadequate if the plaintiff still avoids the benefit out of fear for their safety). Although an accommodation need not be perfect or the one most strongly preferred, "it still must be effective[.]" *Wright*, 831 F.3d at 72 (citation omitted). The district court's holding that CCSD's alternatives have "by-and-large been effective, allowing the students to attend in-person schooling as often as their health allows," is legal error. *See* Order [82] at 15.

## <u>CONCLUSION</u>

Students respectfully request that this Court reverse the district court's Order [82] denying their request for preliminary injunction and dismissing A.Z. and C.S. as parties to this case. Students request that this Court hold that A.Z. and C.S. have standing to proceed. Students further request that this Court hold that Students are substantially likely to prevail on the merits of their claims under the ADA and the RA and remand their motion for preliminary injunction to a district court to determine whether Students satisfy the remaining prerequisites for issuance of a preliminary injunction.

Dated: August 31, 2023.

Respectfully submitted,

**SOUTHERN POVERTY LAW CENTER**

*/s/ Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Eugene Choi
Ga. Bar No. 121626
Claire Sherburne
Ga. Bar No. 732244
Brock Boone
Ala. Bar No. 2864-L11E
150 E. Ponce de Leon Ave.
Decatur, GA 30030
(334) 956-8273
michael.tafelski@splcenter.org
eugene.choi@splcenter.org
claire.sherburne@splcenter.org
brock.boone@splcenter.org

**LAW OFFICE OF ALLISON B. VROLIJK**

*/s/ Allison B. Vrolijk*
Allison B. Vrolijk
Ga. Bar No. 299360
885 Woodstock Road, Suite 430-318
Roswell, GA 30075
(470) 550-7268
allison@vrolijklaw.com

**GOODMARK LAW FIRM**

*/s/ Craig Goodmark*
Craig Goodmark
Ga. Bar No. 301428
1425 Dutch Valley Place, Suite A
Atlanta, GA 30324
(404) 719-4848
cgoodmark@gmail.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing **Appellants' Opening Brief** complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 8,475 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

The undersigned further certifies that **Appellant's Opening Brief** complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point and roman style font.

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Counsel for Appellants

Dated: August 31, 2023

## CERTIFICATE OF SERVICE

I certify that on August 31, 2023, the foregoing **Appellants' Opening Brief** was filed with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send notification of filing via email to the following counsel of record:

Brandon O. Moulard
Sherry H. Culves
Jeffrey R. Daniel
Parker, Poe, Adams & Bernstein, LLP
1075 Peachtree St., NE
Suite 1500
Atlanta, GA 30309
(678) 690-5750
brandonmoulard@parkerpoe.com
sherryculves@parkerpoe.com
jeffdaniel@parkerpoe.com
*Counsel for Appellees*

I also certify that on this same date, pursuant to 11th Cir. R. 31-3, four copies of the foregoing document were sent by hand delivery to the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit.

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Counsel for Appellants

Dated: August 31, 2023